UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JEFFREY ROY CROSBY,

                Petitioner,

     V.

WARDEN, FCI Raybrook,

                Respondent.

**REPORT AND RECOMMENDATION**

07-CV-1180
(LEK/VEB)

---

## I. INTRODUCTION

Petitioner Jeffrey Roy Crosby commenced this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2241. Petitioner was convicted and sentenced in the United States District Court for the District of South Carolina. When his Petition was filed, Petitioner was incarcerated at the Federal Correctional Institution (FCI) located in Ray Brook, New York. Petitioner has since been transferred to the United States Penitentiary in Canaan, Pennsylvania.

Petitioner was convicted in 1996 after trial on two counts of Solicitation to Murder a United States Probation Officer in violation of 18 U.S.C. §§ 373 and 1114. He was sentenced to 240 months for each count, to be served consecutively. Petitioner contends that his conviction was obtained in violation of his constitutional rights and should therefore be vacated.

The Honorable Norman A. Mordue, Chief United States District Judge, referred the Petition to this Court pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), for a report and recommendation. (Docket No. 8).

## II. BACKGROUND

The following is a brief summary of the factual and procedural history of this matter.[1] In September 1995, while Petitioner was incarcerated and awaiting trial on weapons charges, Terry McKnight, a fellow inmate, contacted government agents and advised them that Petitioner was attempting to solicit the murder of his former probation officer, Robert Lee Baird. Petitioner apparently blamed Baird for the weapons charges.

In response to this information, the government launched an investigation, interviewing Jimmy Parker, an inmate known to associate with Petitioner. Parker told the agents that Petitioner had discussed wanting to have Baird murdered, but that he did not think the discussion was serious.

In February 1996, Michael Ray, another inmate, sent a letter to governmental agents advising of further attempts by Petitioner to solicit Baird's murder. Arrangements were made to have Ray wear a recording device. Ray successfully obtained an audio recording of inculpatory statements by Petitioner.

On April 16, 1996, Petitioner was indicted by a federal grand jury on two counts of solicitation to murder a United States Probation Officer, in violation of 18 U.S.C. §§ 373 and 1114. Following the indictment, Roy Toothe, another inmate, came forward with information regarding further efforts by Petitioner to solicit Baird's murder. In addition, upon further interviewing, Parker stated that, in fact, he did believe Petitioner was serious when he discussed having Baird murdered.

---

[1] This factual background is drawn from the decision and order of the Honorable C. Weston Houck, United States District Judge for the District of South Carolina, Florence Division, dated March 30, 1999.

Petitioner was convicted on both counts after trial on July 26, 1996. On direct appeal, Petitioner argued, *inter alia*, that "the wiretap tapes were unintelligible, prejudicial, confusing, misleading, and not protected against tampering, and that the district court erred in denying his motion to suppress certain statements [Petitioner] made on the tapes." United States v. Crosby, 139 F.3d 893 (unpublished disposition); 1998 WL 165788, at *3 (4th Cir. Apr. 2, 1998). In addition, Petitioner claimed that "witness testimony as to the portions of the tapes that were unintelligible was inaccurate, misleading, and prejudicial, and specifically claim[ed] discrepancies between what he actually said on portions of the tape and what the witness testified (and the transcripts reflected) that he said." Id.

The Court of Appeals for the Fourth Circuit affirmed the district court, noting *inter alia* that Petitioner's "counsel had the opportunity to explore through cross-examination any inaccuracies in the tapes, the testimony relating to the tapes, and the transcripts." Id. at *4. The Supreme Court denied Petitioner's petition for writ of certiorari on November 9, 1998.

On March 14, 1996, while his direct appeal was pending, Petitioner challenged his conviction via a motion pursuant to 28 U.S.C. § 2255 in the District of South Carolina. The District Court denied the motion in an Order dated March 30, 1999, and Petitioner appealed. The Fourth Circuit "reviewed the record and the district court's opinion and [found] no reversible error." United States v. Crosby, 215 F.3d 1322 (unpublished), 1999 WL 1134554 (4th Cir. July 15, 1999).[2] The Supreme Court denied Petitioner's petition for writ of certiorari on April 17, 2000.

---

[2]Following the Fourth Circuit's decision, it apparently came to the District of South Carolina Court's attention that Petitioner's § 2255 motion had been filed prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996. The Fourth Circuit accordingly granted a rehearing, but denied the motion and affirmed on the reasoning of the district court. United States v. Crosby, 215 F.3d 1322 (unpublished), 1999 WL 1203788 (4th Cir. Dec. 13, 1999).

On August 19, 1998, Petitioner mounted an indirect challenge to his conviction by filing suit against various defendants, including the prosecuting attorney, his former probation officer, an FBI agent involved in the investigation, and one of the government informants. That suit was dismissed by the District Court for the District of South Carolina on June 16, 1999. The Fourth Circuit affirmed on or about November 12, 1999.

On June 9, 1999, Petitioner filed a second motion challenging his sentence pursuant to 28 U.S.C. § 2255. The District Court denied the motion in a lengthy decision and order dated October 17, 2000. The Fourth Circuit affirmed the District Court and dismissed the appeal on or about March 27, 2001. Petitioner's subsequent efforts to reopen the case and obtain a rehearing were denied. See United States v. Crosby, 204 Fed. Appx. 243 (unpublished), 2006 WL 3220690 (4th Cir. Nov. 7, 2006).

### III. DISCUSSION

**A.    Federal Prisoners and § 2241 Habeas Relief**

The customary method by which a federal prisoner challenges the constitutionality of a conviction is a motion pursuant to 28 U.S.C. § 2255. As discussed above, Petitioner has filed at least two unsuccessful motions challenging his underlying conviction in the District of South Carolina. In the instant Petition, he seeks the same relief under 28 U.S.C. § 2241. As a threshold matter, it is necessary to review the differences between petitions brought under section 2241 and post-conviction motions made pursuant to section 2255, and consider the circumstances in which such petitions and motions may be brought by federal prisoners.

Pursuant to the Judiciary Act of 1789, ch. 20, § 14, 1 Stat. 73, 81-82, federal courts have jurisdiction to issue writs of habeas corpus to prisoners in the custody of the federal government. See McCleskey v. Zant, 499 U.S. 467, 477-78, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); United States v. Hayman, 342 U.S. 205, 210, 72 S.Ct. 263, 96 L.Ed. 232 (1952). This judicial power is codified at 28 U.S.C. § 2241, which provides, in pertinent part, that federal courts may consider habeas corpus petitions from federal prisoners "in custody in violation of the Constitution or laws or treaties of the United States." See Jiminian v. Nash, 245 F.3d 144, 147 (2d Cir.2001).

However, in 1948, Congress enacted 28 U.S.C. § 2255, which restricted the exercise of § 2241 jurisdiction, "such that federal prisoners challenging the legality of their convictions or sentences must proceed by way of motion pursuant to 28 U.S.C. § 2255, with § 2241 petitions generally reserved for challenges to 'the *execution* of a federal prisoner's sentence.'" Cephas v. Nash, 328 F.3d 98, 103 (2d Cir. 2003) (quoting Jiminian, 245 F.3d at 146-47 (emphasis in original)); see also Triestman v. United States, 124 F.3d 361, 373-74 (2d Cir. 1997).

However, although a federal prisoner must generally use § 2255 instead of § 2241 when challenging the legality of a conviction or sentence, § 2255 contains an important "savings clause," which permits a § 2241 petition where "the remedy by motion [pursuant to § 2255] is inadequate or ineffective to test the legality of his detention."

The Second Circuit has explained that:

The net result of this statutory scheme is to limit federal jurisdiction to hear habeas claims based on the invalidity of a federal conviction or sentence to § 2255 unless a petitioner can show that a motion pursuant to that section is "inadequate or ineffective to test the legality of his detention." If such a showing can be made, federal courts retain jurisdiction to hear the habeas petition pursuant to § 2241. But

> if the necessary showing cannot be made, § 2241 cannot be invoked, and the district court must either dismiss the habeas petition for lack of jurisdiction or recast it as a § 2255 motion

Cephas, 328 F.3d at 104.

Accordingly, the threshold question presented by the instant Petition is whether Petitioner can demonstrate that a motion pursuant to § 2255 is "inadequate or ineffective to test the legality of his detention." Absent such a showing, this Court lacks jurisdiction to consider the instant Petition under § 2241.

**B.   Analysis**

   **1.   Savings Clause Standard**

In Triestman and Cephas, the Second Circuit considered the meaning of the "inadequate and ineffective" standard for invoking the savings clause of § 2255. To wit, the Second Circuit concluded that the phrase refers to "those cases 'in which the petitioner cannot, for whatever reason, utilize § 2255, and in which the failure to allow for collateral review would raise serious constitutional questions.'" Cephas, 328 F.3d at 104 (quoting Triestman, 124 F.3d at 377). The Second Circuit indicated that this standard would be satisfied in "relatively few" cases. Id.

Courts, including the Second Circuit, have generally concluded that the savings clause standard is satisfied only in cases "involving prisoners who (1) can prove 'actual innocence on the existing record' and (2) could not have effectively raise [their] claim[s] of innocence at an earlier time." Cephas, 328 F.3d at 104 & n.6 (collecting cases and quoting Triestman, 124 F.3d at 378) (alterations in original).

In the present case, this Court finds that Petitioner has failed to establish either of

these elements and, as such, cannot invoke § 2255's savings clause. In support of his claim of actual innocence, Petitioner submits an unsworn declaration from Donald Anthony Bouknight, dated August 26, 2002. (Docket No. 1 at "Exhibit B"). Mr. Bouknight states that he utilized a computer program known as "Cool Edit" to analyze the tape recorded conversation introduced against Petitioner at trial. (Id.). Mr. Bouknight explains that he received a copy of the audiotape from Petitioner's mother. (Id.). He opines in his unsworn declaration that certain portions of the tape appear to have been deleted, edited, or changed. (Id.). In particular, Bouknight states that at one point, he believes that Petitioner stated that "I don't want to kill anybody." (Id.).

This portion of the audiotape was evidently inaudible without enhancement. At trial, Michael Ray, testifying as a government witness, apparently testified that Petitioner said "I don't want to kill kids, yeah." Petitioner suggests that the tape may have been altered by the government in an effort to suppress the exculpatory statement that Petitioner did not "want to kill anybody."

However, the record indicates that this argument and Bouknight's unsworn declaration were previously presented to the District Court in South Carolina in support of one of Petitioner's § 2255 motions. In an Order dated October 17, 2000, the Honorable Cameron McGowan Currie, United States District Judge, rejected Petitioner's claim that the government tampered with the audiotapes.

Specifically, Judge McGowan noted that the prosecution explained at trial how the tapes had been enhanced and edited. Judge McGowan further concluded that Petitioner was not unfairly prejudiced by the introduction of the audiotape recordings, because while the recordings were "certainly strong evidence" of Petitioner's guilt, "it was by no means the

7

only evidence." Citing the trial transcript, Judge McGowan noted that, in addition to the tape recordings, the government presented four witnesses, all of whom testified that Petitioner discussed his plan to have Baird murdered. In addition, Judge McGowan noted that Petitioner testified at trial and admitted that several very damaging statements contained in the audiotape recordings were accurately described.

To establish "actual innocence," a petitioner must show that in light of all of the evidence available, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup v. Delo, 513 U.S. 298, 328 (1995). In light of the foregoing, this Court finds Petitioner has failed to establish a colorable claim of actual innocence, even if this Court were to credit Mr. Bouknight's unsworn opinion that the tape recording indicates that Petitioner said on one occasion that he "didn't want to kill anybody."

In other words, even assuming *arguendo* that Petitioner made such a statement, it would not *ipso facto* overpower all of the other evidence, which, as outlined by Judge McGowan and discussed above, strongly supported the jury's finding that Petitioner was guilty as charged.

Moreover, Petitioner does not offer any suggestion that there has been a change in the controlling law since Judge McGowan's decision was rendered or that any newly discovered evidence provides support for his claim of actual innocence. Indeed, the only apparently "new" piece of evidence offered by Petitioner is a letter from Steven Cain, President/CEO of Forensic Tape Analysis, Inc. to Petitioner's attorney, dated October 7, 2003. However, that letter does not actually support Petitioner's claim and, in fact, casts at least some doubt upon it by suggesting that Petitioner might have said "I don't want to kill

*them.*" At best, Mr. Cain's unsworn letter provides further support for Petitioner's claim that the tape recording, properly enhanced, revealed that he said, on one occasion, that he did not want to kill "him," presumably in reference to Baird. As discussed above, this fact, even if true, when viewed in context, does not establish a colorable claim of actual innocence.

Lastly, and most importantly, Petitioner cannot establish that the instant Petition is anything more than an attempt to re-litigate issues that were previously decided by other courts. There is no indication that Petitioner was unable to raise the instant claim via a §2255 motion and, in fact, it appears that he did so unsuccessfully on at least one prior occasion.

The savings clause standard is not satisfied where, as here, the petitioner is seeking to use a §2241 petition to relitigate issues previously determined either on direct appeal or in an unsuccessful §2255 motion. See Sanchez v. United States of America, No. 04-Civ-1827, 2005 WL 1005159, at *2 (S.D.N.Y. Apr. 30, 2005) ("Indeed, *habeas corpus* does not provide an opportunity to relitigate previously adjudicated issues. When the court has previously made a finding on direct review, generally, the decision will not be reexamined to avoid repetitive review of resolved disputes.").

Petitioner suggests that the denial of his prior § 2255 motions without a hearing satisfies the savings clause standard and permits consideration of the instant § 2241 petition. However, it is well-settled that a prior unsuccessful § 2255 motion, in which a hearing was not afforded, does not, by itself, render § 2255 "inadequate or ineffective" and courts have consistently rejected attempts by petitioners to circumvent the process in this manner by seeking §2241 review. See Jiminian v. Nash, 245 F.3d 144, 147 (2d Cir. 2001) (citing with approval Tolliver v. Dobre, 211 F.3d 876, 878 (5th Cir. 2000) (holding that "a prior

9

unsuccessful § 2255 motion, or the inability to meet AEDPA's 'second or successive' requirement, does not make § 2255 inadequate or ineffective" and rejecting petitioner's attempt "to circumvent the limitations on filing successive § 2255 motions" by filing §2241)); Bradshaw v. Story, 86 F.3d 164, 166-67 (10th Cir. 1996) ("Failure to obtain relief under 2255 does not establish that the remedy so provided is either inadequate or ineffective.").

Moreover, even assuming *arguendo* that Petitioner had presented a colorable actual innocence claim and/or that some aspects of the audiotape tampering claim were not specifically raised or addressed in the prior proceedings, Petitioner has failed to establish that the claim could not have been raised at an earlier time. As noted above, the Second Circuit has held that a claim of actual innocence is not sufficient standing alone. Rather, the petitioner must also demonstrate that the claim could not have been effectively raised at an earlier time. See Cephas, 328 F.3d at 108 ("Where a habeas petitioner asserts actual innocence as part of an effort to argue the inadequacy or ineffectiveness of § 2255, he must both state a colorable basis for that claim *and demonstrate his inability to effectively have raised it at an earlier time.*") (emphasis added); cf. also Adams v. United States, 372 F.3d 132, 135 (2d Cir. 2004) ("We agree with the district court that his petition does not raise serious constitutional questions because appellant has not alleged actual innocence and all of his arguments could have been raised-or in some cases actually were raised-in prior proceedings."); Gordon v. Craig, 05-CV-0730, 2005 WL 1719763, at *2 (N.D.N.Y. July 22, 2005) ("While it is unclear whether Gordon raised the present claims in a § 2255 motion, it appears he could have raised them. He cannot not [sic] now resort to § 2241 merely to save his claims, which are now most likely time-barred.").

Accordingly, this Court finds that Petitioner has failed to satisfy the savings clause

10

requirement of §2255 and cannot therefore proceed with the instant Petition for relief under § 2241.

### 2. Proper Disposition

Having determined that Petitioner cannot seek habeas review under § 2241, this Court must now determine the proper disposition of this case. In <u>Adams v. United States of America</u>, the Second Circuit held that when a prisoner files a § 2241 petition in an effort to circumvent §2255's limits on second or successive petitions, the district court may "treat the § 2241 petition as a second or successive § 2255 petition and refer the petition to [the Circuit] for certification, or, if it is plain from the petition that the prisoner cannot demonstrate that a remedy under § 2255 would be inadequate or ineffective to test the legality of his detention, the district court may dismiss the § 2241 petition for lack of jurisdiction." <u>Adams</u>, 373 F3d. at 136.

In the present case, for the reasons outlined above, this Court finds that it is plain from the Petition that Petitioner cannot demonstrate that a remedy under § 2255 would be inadequate or ineffective to test the legality of his detention. In addition, Petitioner was not sentenced in this District and is no longer incarcerated here. As such, venue considerations indicate that this case should be dismissed, rather than converted into a motion under §2255. Cf. <u>Johnson v. United States</u>, 04-CV-1378, 2007 WL 804261, at *1 (N.D.N.Y. Mar. 14, 2007)("A section 2255 motion seeking release because of an unconstitutional sentence must be brought in the court that imposed the sentence.").

In light of the foregoing, this Court finds that the instant Petition should be DISMISSED. <u>See</u> <u>Bostic v. Williamson</u>, No. 04-CV-0769E, 2004 WL 2271386, at *4 (Sep. 30, 2004) (dismissing § 2241 petition where it was "clear from the petition that petitioner

cannot demonstrate that a § 2255 motion would be inadequate or ineffective to test the legality of his present detention because the petition does not raise a serious constitutional question and the issues raised in the instant petition could have been raised--and were raised--in an earlier motion under § 2255"); Joost v. Apker, 476 F.Supp.2d 284, 291 (S.D.N.Y. 2007) ("But the Court cannot recast the petition as a § 2255 motion because it is filed in the wrong court, it is time-barred under the provisions of the AEDPA, and it is a second and successive petition under 28 U.S.C. § 2244. Hence, in keeping with the instructions in Adams, . . . the Court dismisses the petition for lack of jurisdiction.").

## IV. CONCLUSION

For the reasons stated above, the Court recommends Jeffrey Roy Crosby's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 be denied and that the Petition be dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue. See 28 U.S.C. § 2253(c)(2) (1996).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:   October 7, 2008

Syracuse, New York

12

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

October 7, 2008

_____
Victor E. Bianchini
United States Magistrate Judge

_____
Victor E. Bianchini
United States Magistrate Judge

14